ALEX G. TSE (CABN 152348)
Acting United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JULIE D. GARCIA  (CABN 288624)
RANDALL LEONARD (FLBN 0056205)
Assistant United States Attorneys

     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-6758
     Fax: (415) 436-7234
     Email: Julie.Garcia@usdoj.gov
            Randall.Leonard@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 17-381 VC-2 |
|     Plaintiff, | UNITED STATES' MOTIONS IN LIMINE |
|   v. | |
| JOSE ALEJANDRO VASQUEZ ROBLEDO, a/k/a "Gusano," | |
|     Defendant. | |

## TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................... 1
II.  FACTUAL BACKGROUND .................................................................................. 1
III. PROCEDURAL HISTORY ..................................................................................... 2
IV.  ARGUMENT ............................................................................................................ 2
     A.   MOTION IN LIMINE NO. 1: DEA Special Agent Erik Wolf's expert testimony should be
     admitted............................................................................................................................. 2
     B.   MOTION IN LIMINE NO. 2: The expert testimony of DEA Senior Forensic Chemist Danielle
     Farrell should be admitted. ............................................................................................... 5
     C.   MOTION IN LIMINE NO. 3: Armando Esparza's statements should be admitted as co-
     conspirator statements....................................................................................................... 6
     D.   MOTION IN LIMINE NO. 4: Impeachment of the CI—and any other witness—should be
     restricted as Federal Rules of Evidence 608 and 609 direct.............................................. 9
     E.   MOTION IN LIMINE NO. 5: Evidence that the defendant previously supplied drugs to
     Esparza is relevant and admissible under Federal Rule of Evidence 401 and, at a minimum, under
     Rule 404(b). ..................................................................................................................... 10
     F.   MOTION IN LIMINE NO. 6: The Court should implement modest measures to protect the
     safety of the confidential informant and the integrity of ongoing investigations. ........... 15
     G.   MOTION IN LIMINE NO. 7: The Defendant should not be allowed to refer to punishment,
     including potential immigration consequences, in front of the jury. ................................. 16
     H.   MOTION IN LIMINE NO. 8: The defense should not be allowed to reference in opening
     statement facts that it does not reasonably anticipate will be supported by evidence at trial.......... 18
     I.   MOTION IN LIMINE NO. 9: The defense should not be allowed to introduce evidence that
     should have been produced in discovery. ......................................................................... 19
     J.   MOTION IN LIMINE NO. 10: The Court should preclude the defense from presenting
     evidence or argument in support of any affirmative defense for which it has not made a pretrial
     offer of proof..................................................................................................................... 20
V.   CONCLUSION ....................................................................................................... 22

1

## **TABLE OF AUTHORITIES**

2

## **CASES**

3
*Bourjaily v. United States*, 483 U.S. 171 (1987) ............................................................. 7
*Merced v. McGrath*, 426 F.3d 1076 (9th Cir. 2005) ....................................................... 17
4
*Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379 (2008) ..................................... 12
*States v. Bailleaux*, 685 F.2d 1105 (9th Cir. 1982) ....................................................... 15
5
*United States v. Arambula-Ruiz*, 987 F.2d 599 (9th Cir. 1993) .................................... 15
*United States v. Arellano-Rivera*, 244 F.3d 1119 (9th Cir. 2001) ................................ 21
6
*United States v. Bailey*, 444 U.S. 394 (1980) ............................................................... 21
*United States v. Beckman*, 298 F.3d 788 (9th Cir. 2002) ............................................ 12
7
*United States v. Beckman*, 298 F.3d 788 (9th Cir. 2002) ............................................ 14
*United States v. Boulware*, 384 F.3d 794 (9th Cir. 2004) ............................................ 12
8
*United States v. Brooks*, 610 F.3d 1186 (9th Cir. 2010) ............................................... 3
*United States v. Castillo*, 181 F.3d 1129 (9th Cir. 1999) ............................................. 13
9
*United States v. Colbert*, 116 F.3d 395 (9th Cir. 1997) ............................................... 10
*United States v. Curtin*, 489 F.3d 935 (9th Cir. 2007) (en banc) ................................ 13
10
*United States v. Decoud*, 456 F.3d 996 (9th Cir. 2006) ................................................ 4
*United States v. Dorsey*, 677 F.3d 944 (9th Cir. 2012) ................................................ 11
11
*United States v. Frank*, 956 F.2d 872 (9th Cir. 1991) ................................................. 16
*United States v. Gordon*, 844 F.2d 1397 (9th Cir. 1988) ............................................... 7
12
*United States v. Joetzki*, 952 F.2d 1090 (9th Cir. 1991) .............................................. 15
*United States v. Jones*, 982 F.2d 380 (9th Cir. 1992) .................................................. 13
13
*United States v. Kearns*, 61 F.3d 1422 (9th Cir. 1995) ................................................. 4
*United States v. Klimavicius-Viloria*, 144 F.3d 1249 (9th Cir. 1998) ........................... 4
14
*United States v. Lightfoot*, 483 F.3d 876 (8th Cir. 2007) .............................................. 9
*United States v. Mack*, 164 F.3d 467 (9th Cir. 1999) .................................................. 21
15
*United States v. McCaleb*, 552 F.3d 1053 (9th Cir. 2009) ............................................. 6
*United States v. Murillo*, 255 F.3d 1169 (9th Cir. 2001) ............................................... 5
16
*United States v. Ono*, 918 F.2d 1462 (9th Cir. 1990) .................................................. 14
*United States v. Osazuwa*, 564 F.3d 1169 (9th Cir. 2009) ............................................ 9
17
*United States v. Parker*, 133 F.3d 322 (5th Cir. 1998) ............................................... 10
*United States v. Pavon*, 561 F.2d 799 (9th Cir. 1977) ................................................ 10
18
*United States v. Plunk*, 153 F.3d 1011 (9th Cir.), *amended on denial of reh'g*, 161 F.3d 1195 (9th Cir. 1998) ......................................................................................................... 4
19
*United States v. Reed*, 575 F.3d 900 (9th Cir. 2009) ..................................................... 7
*United States v. Romero*, 282 F.3d 683 (9th Cir. 2002) .............................................. 14
20
*United States v. Sepulveda-Barraza*, 645 F.3d 1066 (9th Cir. 2011) ............................ 5
*United States v. Soliman*, 813 F.2d 277 (9th Cir. 1987) ............................................. 12
21
*United States v. Tamez*, 941 F.2d 770 (9th Cir. 1991) .................................................. 7
*United States v. Torralba-Mendia*, 784 F.3d 652 (9th Cir. 2015) ................................ 3
22
*United States v. Valencia-Amezcua*, 278 F.3d 901 (9th Cir. 2002) ............................... 4
*United States v. Vasquez-Landaver*, 527 F.3d 798 (9th Cir. 2008) ............................ 20
23
*Windham v. Merkle*, 163 F.3d 1092 (9th Cir. 1998) ..................................................... 12

24

## **RULES**

Fed. R. Evid. 401 ...................................................................................................... 8, 12
25
Fed. R. Evid. 404(b) ................................................................................................ 12, 13
Fed. R. Evid. 608 ............................................................................................................ 9
26
Fed. R. Evid. 609 ............................................................................................................ 9
Fed. R. Evid. 801(d)(2)(E) .............................................................................................. 6
27
Fed. R. Crim. P. 16(b) .................................................................................................. 19
Fed. R. Crim. P. 26.2 .................................................................................................... 20

28

## I.     INTRODUCTION

The United States (the "government") submits the following motions *in limine* for the Court's consideration.  The government respectfully requests the opportunity to supplement these motions *in limine* if additional legal issues arise requiring the Court's intervention.  In addition, because the defendant has not yet provided any reciprocal discovery, as required under Fed. R. Crim. P. 16(b), the government requests the opportunity to supplement these motions *in limine* to address any issues triggered by the defense.

## II.    FACTUAL BACKGROUND

On November 16, 2015, a confidential informant ("CI") working with the Bureau of Alcohol, Tobacco, Firearms & Explosives made contact with Armando Ramirez Esparza by phone.  Over the course of that day, as reflected in several recorded telephone calls, Esparza offered to sell the CI two ounces of methamphetamine for $1200.  Esparza instructed the CI to meet him and a "friend" at Colombo Liquors in South San Francisco the following day to complete the deal.

Video captured by a hidden camera on the CI shows that, on November 17, 2015, the CI met Esparza at Colombo Liquors.  Esparza explained to the CI that he did not have the methamphetamine with him, and he asked the CI to walk down the street with him to meet his "connection" for the drugs.  The CI declined, and Esparza left.  ATF agents surveilling the scene then saw Esparza walk one block away to Papa Joe's Taqueria, where he met with the defendant, Jose Alejandro Vasquez Robledo.

After speaking with the defendant, Esparza returned to Colombo Liquors and advised the CI that it would be thirty more minutes before the deal would take place.  Esparza and the CI then walked to Papa Joe's Taqueria together.  Moments later, the defendant exited the restaurant.  The CI asked how much longer it would take, and the defendant responded that it would be "twenty minutes."  The CI and the defendant exchanged phone numbers.  The defendant then departed, and the CI and Esparza walked back to Colombo Liquors.  Shortly thereafter, Esparza departed.

Approximately twenty minutes later, Esparza requested that the CI accompany him to an alley where the deal could take place.  The CI declined, and Esparza left.  The CI then called the defendant and asked how much longer it would take to complete the deal.  The defendant responded, "Five minutes, please."  Approximately ten minutes later, the CI called the defendant again and asked what

was taking so long.  The defendant responded: "The guy, I got it for you."  Moments later, Esparza
arrived on his bike with two ounces of methamphetamine.  In a corner of the Colombo Liquors parking
lot, the CI purchased the two ounces of methamphetamine for $1200.

During the purchase, the defendant stood near Papa Joe's Taqueria, apparently attempting to
observe the transaction.  After the deal, Esparza biked over to the defendant and handed him what
appeared to be money.  The defendant appeared to count the money before putting it in his pocket.

## III.    PROCEDURAL HISTORY

In July 2017, a grand jury charged both Esparza and Robledo with conspiracy to distribute
methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B)(viii) and distribution of
methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii).  Dkt. 1.  On November 7,
2017, Esparza pleaded guilty to both counts in the Indictment.  Dkt. 35.

Defendant Robledo's trial is scheduled to begin on February 7, 2017.

## IV.    ARGUMENT

### A.    **MOTION IN LIMINE NO. 1: DEA Special Agent Erik Wolf's expert testimony should be admitted.**

Under Rule 702, if scientific, technical, or other specialized knowledge will assist the jury to
understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge,
skill, experience, training, or education, may provide opinion testimony.

The government has given notice that it intends to call DEA Special Agent Erik Wolf as an
expert witness regarding the distribution of controlled substances, specifically, methamphetamine, and
the investigation thereof.  Specifically, the government has provided notice that it expects Special Agent
Wolf to testify to the following opinions:

1. In the context of drug trafficking, the term "crystal" refers to crystal methamphetamine, and the term "zip" refers to an ounce.

1. Narcotics traffickers often attempt to evade detection by law enforcement by avoiding referring to the names of the drugs or to units of measurement, such as ounces, pounds, or kilograms.

2. Narcotics traffickers often attempt to evade detection by law enforcement by using another person to deliver the drugs and to accept payment, or by otherwise not conducting the hand-to-

1     hand deal directly with the buyer.

2     3.   As of 2015, the street price of one ounce of methamphetamine in the area covered by the DEA's

3     San Francisco Field Division, which includes South San Francisco, was $300 to $1200 per

4     ounce.

5     Special Agent Wolf's testimony will be based on his specialized knowledge of drug dealing

6   gained through his nearly six years as a Special Agent with the Drug Enforcement Administration, his

7   hundreds of hours of specialized training, and his extensive experience investigating narcotics

8   trafficking.  As set forth in the government's disclosure to the defense, Special Agent Wolf has

9   participated in more than 50 controlled purchases of methamphetamine and has been personally

10  involved in investigations leading to the seizure of over 900 pounds of the drug.  He has authored more

11  than ninety affidavits in support of search warrants and court orders and approximately twelve affidavits

12  in support of state and federal wiretaps, all related to narcotics investigations.  In the course of these

13  investigations, Special Agent Wolf has listened to and reviewed transcripts of more than one hundred

14  hours of conversations between narcotics traffickers in which they discussed their criminal activities in

15  coded language, the meaning of which was later corroborated by observations during surveillance or

16  statements from defendants and confidential informants.

17     This extensive training and experience and specialized knowledge of drug dealing qualifies

18  Special Agent Wolf to offer the expert opinions listed above.  *See, e.g.*, *United States v. Torralba-*

19  *Mendia*, 784 F.3d 652, 657 (9th Cir. 2015) (approving of the admission of an officer's expert testimony

20  about "the standard practices of alien smuggling organizations" based on his years of law enforcement

21  experience along the border); *United States v. Brooks*, 610 F.3d 1186, 1196 (9th Cir. 2010) (approving

22  of the admission of a detective's expert testimony on the business of child prostitution where detective

23  had two and a half years' experience in the vice enforcement unit, had conducted more than twenty child

24  prostitution investigations, and had attended specialized trainings on child prostitution).

25     Moreover, Special Agent Wolf's anticipated testimony will assist the jury to understand the

26  evidence at trial and to determine facts in issue, such as the existence of a drug conspiracy.  Because

27  narcotics trafficking is an activity conducted according to a set of practices not commonly known or

28  understood by members of the general public, the Ninth Circuit has consistently approved of expert

testimony by law enforcement agents regarding the common practices of narcotics traffickers.  *See*

*United States v. Valencia-Amezcua*, 278 F.3d 901, 909 (9th Cir. 2002) (approving the admission of

expert testimony on the modus operandi of drug traffickers and noting "several prior decisions endorsing

the admission" of such expert testimony); *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1259-60

(9th Cir. 1998) (approving the admission of a DEA expert's testimony that "inform[ed] the jury of the

techniques employed by drug dealers in their illegal trade, techniques with which an ordinary juror

would most probably be unfamiliar"); *United States v. Kearns*, 61 F.3d 1422, 1427 (9th Cir. 1995)

(approving admission of DEA agent's expert testimony that "[d]rug traffickers attempt to put someone

between them[selves] and the [drug] buyer, for fear that the buyer may be the police").

As the Ninth Circuit has explained, such expert testimony assists the jury by "alert[ing] it to the

possibility that combinations of seemingly innocuous events may indicate criminal behavior."  *Valencia-*

*Amezcua*, 278 F.3d at 909-10.  Here, where the government expects that the defendant will claim

ignorance of the drug transaction at which he was present, Special Agent Wolf's testimony regarding the

modus operandi of street-level drug dealers will assist the jury in determining whether the defendant did,

in fact, conspire with Eparza to sell two ounces of methamphetamine.  For example, Special Agent

Wolf's testimony will assist the jury in determining whether the defendant's actions show that he was

involved in the sale even though Esparza performed the hand-to-hand transaction with the CI.

Special Agent Wolf's testimony regarding the meaning of code words and narcotics traffickers'

practice of avoiding mentioning the names and quantities of drugs will also assist the jury in determining

whether a drug conspiracy existed.  For example, such testimony will assist the jury in determining

whether the terms "crystal" and "zip" are related to drug trafficking, and whether seemingly innocuous

conversions about "two" of something in fact refer to two ounces of drugs.  The Ninth Circuit has

consistently approved of admitting such expert testimony, noting that "the jargon of the narcotics trade

and the codes that drug dealers often use constitute specialized bodies of knowledge—certainly beyond

the ken of the average juror—and are therefore proper subjects of expert opinion."  *United States v.*

*Plunk*, 153 F.3d 1011, 1017 (9th Cir.), *amended on denial of reh'g*, 161 F.3d 1195 (9th Cir. 1998),

*overruled on other grounds by United States v. Hankey*, 203 F.3d 1160, 1169 n.7 (9th Cir. 2000); *see*

*also United States v. Decoud*, 456 F.3d 996, 1013 (9th Cir. 2006) (approving of the admission of drug

1  expert's testimony that the terms "diznerty," "woop-wop," "weezy," and "shake my speezy" were

2  actually coded terms about drug deals).

3        Similarly, Special Agent Wolf's testimony regarding the price of the narcotics at issue will assist

4  the jury in determining whether the defendant knew that the substance being sold to the CI was

5  methamphetamine.  Special Agent Wolf is expected to testify that the street price of an ounce of

6  methamphetamine in South San Francisco in 2015 was $300 to $1200 per ounce, and the government

7  intends to show that the CI paid $1200 for the two ounces of methamphetamine he received, and that

8  most of that money went to the defendant.  The fact that the defendant received an amount of money

9  consistent with the street price of methamphetamine makes it more likely that he knew that the

10  substance being sold to the CI was methamphetamine and not some other substance.  Because this

11  testimony goes to the defendant's knowledge of the drugs at issue, it is both relevant and probative.  *See,*

12  *e.g.*, *United States v. Sepulveda-Barraza*, 645 F.3d 1066, 1072 (9th Cir. 2011) (expert's opinion that the

13  drugs seized from the defendant were worth $150,000 and his opinion that drug trafficking organizations

14  do not normally entrust such a large amount of drugs to unwitting couriers was relevant because it "went

15  right to the heart of [defendant]'s defense that he was simply an unknowing courier"); *United States v.*

16  *Murillo*, 255 F.3d 1169, 1176 (9th Cir. 2001) (DEA expert witness's testimony regarding the value of

17  the drugs involved in the deal was relevant because it went to defendant's knowledge of the drugs).

18        For the foregoing reasons, the government respectfully requests that the expert testimony of

19  DEA Special Agent Erik Wolf be admitted.

20    B.    **MOTION IN LIMINE NO. 2: The expert testimony of DEA Senior**
           **Forensic Chemist Danielle Farrell should be admitted.**

21

22        The Court should also admit the expert testimony of DEA Senior Forensic Chemist Danielle

23  Farrell about her chemical tests on the suspected methamphetamine that Esparza and the defendant sold

24  to the CI on November 17, 2017.  The government has provided notice to the defense that it expects Ms.

25  Farell to testify to the following opinions:

26    1. The substance seized in this case and sent to Ms. Farrell for testing weighed 60.3 grams,

27       +/ 0.2 grams, and was 99%, +/- 4%, pure methamphetamine, with an uncertainty

28       estimate at the 95% level of confidence.

2.  The substance seized in this case and sent to her for testing contained 59.6 grams, +/-

2.2 grams, of pure methamphetamine, with an uncertainty estimate at the 95% level of

confidence.

Ms. Farrell's testimony will be based on her scientific, technical, and professional expertise in forensic chemical analysis, which she has acquired through her formal education in chemistry and her roughly eight years as a DEA chemist.  As detailed in the government's disclosure to the defense, Ms. Farrell has provided chemical analysis on more than 2900 exhibits and she has testified as an expert witness on nineteen previous occasions.

This training and expertise qualifies Ms. Farrell to offer opinions on the topics listed above. In addition, Ms. Farrell's testimony will help the jury understand the evidence—namely, the suspected drugs sold and seized in the case—and determine certain critical facts: whether those suspected drugs were in fact methamphetamine, and if so, how much methamphetamine it was.  *See United States v. McCaleb*, 552 F.3d 1053, 1060 (9th Cir. 2009) (affirming the admission of forensic chemist's expert testimony "about the actual yield of PCP that could be produced in a clandestine laboratory for the purpose of establishing the fact that the conspiracy [] involved more than 100 grams").

For these reasons, Ms. Farrell's testimony should be admitted.  The government notes, however, that the government and the defense have discussed the possibility that the parties will stipulate to the fact that the substance at issue in this case contained methamphetamine.  If the parties reach such a stipulation, we will notify the Court.

C.  **MOTION IN LIMINE NO. 3: Armando Esparza's statements should be admitted as co-conspirator statements.**

The government intends to offer out-of-court statements made by the defendant's co-conspirator, Armando Esparza, in furtherance of the conspiracy alleged in Count One, pursuant to Federal Rule of Evidence 801(d)(2)(E).  These statements will consist of recorded statements on telephone calls between Esparza and the CI, recorded statements on a video captured on the day of the drug deal, and statements that Esparza made to the CI in person.

To introduce a statement of a co-conspirator into evidence against a defendant, the government must show, by a preponderance of the evidence, (1) the existence of the conspiracy; (2) the defendant's

1   connection to it, and (3) that the statement was made during and in furtherance of the conspiracy.  *See*

2   *Bourjaily v. United States*, 483 U.S. 171, 175-76, 181-82 (1987).  The trial court is not required by the

3   Confrontation Clause to make an inquiry into the independent indicia of the reliability of the statement.

4   *Id*. at 175-76.  Although co-conspirator statements alone cannot prove the existence of a conspiracy, the

5   statements themselves may be considered in determining the existence of the conspiracy. *United States*

6   *v. Gordon*, 844 F.2d 1397, 1402 (9th Cir. 1988); *see also Bourjaily*, 483 U.S. at 181 (stating that "the

7   judge should receive the evidence and give it such weight as his judgment and experience counsel")

8   (quotations and citations omitted); *United States v. Tamez*, 941 F.2d 770, 774-75 (9th Cir. 1991).  Once

9   a conspiracy is shown, the prosecution need only present slight evidence connecting the defendant to the

10  conspiracy. *United States v. Mason*, 658 F. 2d 1263, 1269 (9th Cir. 1981).  Recognizing that

11  conspiracies are generally clandestine agreements not capable of direct proof, the Ninth Circuit has held

12  that proof by of the slight connection "may be inferred by circumstantial evidence." *United States v.*

13  *Reed*, 575 F.3d 900, 924 (9th Cir. 2009) (citing *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095

14  (9th Cir. 2001)).

15       The government has disclosed to the defendant all the recorded calls and in-person

16  communications between the CI and Esparza during the course of the conspiracy.  These

17  communications, the testimony of percipient witnesses, and other corroborating evidence will satisfy the

18  Court that the statements qualify as co-conspirator statements—that is, the evidence will show that a

19  conspiracy existed, that the defendant participated in the conspiracy, and that Esparza's statements were

20  made in furtherance of the conspiracy.

21       First, the audio and video evidence in this case—including the content and nature of Esparza's

22  and the defendant's statements on those recordings—shows that the defendant and Esparza conspired to

23  distribute and possess with intent to distribute methamphetamine.  Throughout the recorded telephone

24  calls from November 16, 2015, Esparza and the CI discussed the CI's purchase of two ounces of

25  methamphetamine, and Esparza indicated that he had to check with a third party regarding the price of

26  the drugs.  The recorded phone calls reveal that, eventually, the CI and Esparza agreed that the CI would

27  purchase the methamphetamine from Esparza and Esparza's "friend"—a reference to the defendant.  In

28  recorded conversations from the following day, Esparza told the CI that he did not yet have the drugs,

that he was waiting on his "connection," and that the CI would have to wait a little longer to get the drugs he wanted to buy.  In the same conversation, Esparza gave the CI the cell phone number of his "connection"—a number that was registered to the defendant.  In addition, the defendant's own recorded statements from November 17, 2015, show that he conspired with Esparza to sell the drugs.  A hidden camera captured the defendant speaking with Esparza and the CI regarding the proposed drug transaction, telling the CI that the deal would occur in "twenty minutes," and exchanging phone numbers with the CI to ensure that the deal went forward.  Other recorded telephone calls between the CI and the defendant show that the defendant was participating in the deal by letting the CI know when the drugs would arrive.

Second, the government will show that the defendant was connected to the conspiracy.  In addition to the evidence described above, which shows that the defendant participated in the conspiracy with Esparza, the government will present testimony from ATF agents who surveilled the deal.  That testimony will show that, moments after Esparza asked the CI to come meet his "connection," Esparza walked a block away and met with the defendant.  Similarly, ATF agents saw the defendant standing on a nearby street corner, observing the drug deal as it occurred.  Then, moments after Esparza sold methamphetamine to the CI, ATF agents saw Esparza bike over to the defendant and hand him the cash the CI had just paid for the drugs.

Finally, each of Esparza's out-of-court statements was made in furtherance of the conspiracy. The statements all took place on November 16 and 17, 2015, in the course of setting up the drug transaction at issue, and they are about, almost exclusively, the quantity of drugs to be sold, the price of the drugs, or the time and location of the transaction.

For these reasons, Esparza's statements are co-conspirator statements under the Federal Rules of Evidence and binding court precedent.  For many of the same reasons, the statements are relevant.  *See* Fed. R. Evid. 401.  They are therefore admissible, and the government asks that the Court rule accordingly.  *See Bourjaily*, 483 U.S. at 181; Fed. R. Evid. 402, 801(d)(2)(D).

//

//

//

D.     **MOTION IN LIMINE NO. 4: Impeachment of the CI—and any other witness—should be restricted as Federal Rules of Evidence 608 and 609 direct.**

The government intends to call the CI to testify in this case.  In anticipation of that testimony, the government has met its discovery obligations concerning the CI's criminal history and undercover work with law enforcement.  The government anticipates that the defense will use this disclosure in preparing to cross-examine the CI.

But the Rules of Evidence confine what topics the defense may explore—and what questions the defense may ask—during cross-examination.  *See* Fed. R. Evid. 608, 609; *United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009).  When a criminal conviction is used to impeach a witness, Rule 609 limits impeachment to "the prior conviction, its general nature, and punishment of felony range." *Osazuwa*, 564 F.3d at 1175 (internal citation and quotation marks omitted).  For example, the government's disclosure included the fact that the CI was convicted in 2004 for armed burglary, and the government concedes that cross-examination about this conviction—though not about the facts underlying it—is permissible under Rule 609.

On the other hand, questions about other past acts, or prior arrests, are not permissible unless they bear on the witness's credibility under Rule 608.  *See* Fed. R. Evid. 608, 609.  Nor may a cross-examiner make an end-run around Rule 609 by inquiring into the facts underlying a prior conviction under Rule 608:

> Rule 608(b) permits impeachment only by specific acts that have not resulted in a criminal conviction.  Evidence relating to impeachment by way of criminal conviction is treated exclusively under Rule 609 . . . .

*Osazuwa*, 564 F.3d at 1175; *see also United States v. Lightfoot*, 483 F.3d 876, 881 (8th Cir. 2007) ("Rule 608(b) . . . confers upon district courts discretion to permit witness-credibility questioning on specific bad acts *not resulting in a felony conviction*." (emphasis added)).  In short, the government concedes that limited questioning about the CI's prior felony conviction—about its existence, the particular offense, and the fact that it was a felony—is permissible.  *See* Fed. R. Evid. 609.  But questions meant to elicit anything more than these facts are not.  *Osazuwa*, 564 F.3d at 1175; Fed. R. Evid. 608(b).

As noted, questions about "specific instances" not resulting in conviction are governed Federal

Rule of Evidence 608(b), and the rule is clear on its face: "[T]he court may, on cross-examination, allow "specific instances of conduct] to be inquired into *if they are probative of the character for truthfulness* of . . . the witness" (emphasis added).  The Rule "prohibits the introduction of specific acts of conduct for the purpose of impeaching a witness's credibility unless the district court finds such acts to be 'probative of truthfulness or untruthfulness.'" *United States v. Colbert*, 116 F.3d 395, 396 (9th Cir. 1997) (quoting *United States v. Reid*, 634 F.2d 469, 473 (9th Cir. 1980)); *see also United States v. Parker*, 133 F.3d 322, 327 (5th Cir. 1998) ("Prior bad acts that have *not resulted in a conviction* are admissible under [Rule] 608(b) if relevant to the witness's character for truthfulness or untruthfulness." (emphasis added)); *Mason v. Texaco, Inc.*, 948 F.2d 1546 (10th Cir. 1991) ("Under [Rule] 608(b), a defendant may impeach a Government witness by cross-examining him about specific instances of conduct *not resulting in conviction* if such conduct is probative of the witness' character for truthfulness or untruthfulness." (emphasis added)).  Unless the defense can proffer some reason to believe the CI's prior arrests or other acts—or, for that matter, the prior acts of any witness—are probative of truthfulness, impeachment by questioning about these arrests or acts should be excluded.

Accordingly, the government moves for an order precluding the defense from impeaching the CI or any other government witness with past conduct, including prior arrests, that do not bear on his/her truthfulness.  It is critical for the Court to make such a ruling pretrial, because testimony heard by jurors, even if objected to and sustained, is nonetheless heard and remembered.  As courts have said, "it is difficult for jurors to unring a bell." *See United States v. Pavon*, 561 F.2d 799, 801 n.1 (9th Cir. 1977).

E.  **MOTION IN LIMINE NO. 5: Evidence that the defendant previously supplied drugs to Esparza is relevant and admissible under Federal Rule of Evidence 401 and, at a minimum, under Rule 404(b).**

The government intends to offer the testimony of co-defendant Armanda Ramirez Esparza, who expected to testify about his relationship with the defendant and how that relationship led Esparza to join into the conspiracy charged in Count One.  In particular, as the government has disclosed to defense counsel, Esparza may testify to the following:

- The reason that Esparza approached the defendant and asked him for two ounces of methamphetamine to resell to the confidential informant was because he knew from prior

1   interactions with the defendant that the defendant had access to and sold methamphetamine.

2   Esparza had purchased methamphetamine from the defendant on an approximately weekly basis

3   for several years leading up to November 16, 2015, and had on many occasions seen the

4   defendant sell methamphetamine to numerous other individuals inside Club Marakas and

5   elsewhere.

6   • Esparza believes that the defendant was comfortable meeting him in the alley behind Club

7     Marakas to give him methamphetamine because the defendant often conducted drug transactions

8     in and around Club Marakas.

9   This evidence is not "other act" evidence within the meaning of Rule 404(b); rather, it is

10  circumstantial evidence of critical facts of consequence the government must prove at trial.  *See* Fed. R.

11  Evid. 401.  This evidence is inextricably intertwined with the charged crimes, in particular the

12  conspiracy charged in Count One.  *See United States v. Dorsey*, 677 F.3d 944, 952 (9th Cir. 2012)

13  (evidence of other acts is inextricably intertwined with the charged crime if it "constitute[s] a part of the

14  transaction that serves as the basis for the criminal charge" or is "necessary . . . to permit the prosecutor

15  to offer a coherent and comprehensible story regarding the commission of the crime").  More

16  specifically, this testimony "add[s] to the circumstantial case" against the defendant in the following

17  ways: (1) it tends to prove that the defendant entered into a conspiracy with Esparza; (2) it tends to

18  prove that the defendant had the means to commit the charged crimes; (3) it tends to prove that he was in

19  fact the source of the methamphetamine sold on November 17, 2015; and (4) it proves that he knew the

20  substance sold was in fact methamphetamine.  *Id.*  The testimony also allows the government to present

21  a "coherent and comprehensible story regarding the commission of the crime," including by explaining

22  why Esparza approached the defendant for methamphetamine, why the deal took place near Club

23  Marakas, and why on the video Esparza referred to the defendant as his "connection" for drugs.  *Id.*

24  Alternatively, this evidence is, at a minimum, admissible "other act" evidence under Rule

25  404(b)(2).  The particulars of the defendant and Esparza's past dealings will tend to prove the following:

26  (1) that the defendant knew of the conspiracy; (2) that he knew that the substance at the heart of the

27  scheme was in fact methamphetamine; (3) that he intended to possess methamphetamine for sale rather

28  than personal use; (4) and that he planned to use Esparza—someone he knew, and someone who relied

on him as a source for drugs—as his conduit in the drug sale.  Any one of these evidentiary purposes—

knowledge, absence of mistake, intent, and plan—is permissible under Rule 404(b).

### 1.   Esparza's testimony is circumstantial evidence that is relevant under Federal Rule of Evidence 401.

Evidence is relevant so long as it has any tendency to make a fact of consequence to the case

more or less probable.  Fed. R. Evid. 401(a), (b).  The evidence does not need to prove an ultimate issue.

*United States v. Boulware*, 384 F.3d 794, 805 (9th Cir. 2004).  It does not even need to prove an element

of a charged offense.  *See id.*  It merely has to make a fact that matters to the case's outcome more or

less probable than it would have been without the evidence. *Id.*  And when making relevance

determinations, courts should be mindful of the proponent's theory of the case.  *See Sprint/United Mgmt.*

*Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008); *Windham v. Merkle*, 163 F.3d 1092, 1103–04 (9th Cir.

1998).

Evidence of "other acts," meanwhile, is generally governed by Rule 404(b).  But that evidence

"is not subject to Rule 404(b) analysis if it is 'inextricably intertwined' with the charged offense."

*United States v. Beckman*, 298 F.3d 788, 793-94 (9th Cir. 2002) (internal citation omitted); *see also*

*United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987).  This kind of inextricable link can occur in

one of two ways: (1) when "particular acts of the defendant are part of … a single criminal transaction,"

or when (2) "the 'other act evidence' … is necessary [] in order to permit the prosecutor to offer a

coherent and comprehensible story regarding the commission of the crime." *Beckman*, 298 F.3d at 794

(citing *Vizcarra-Martinez*, 66 F.3d at 1012-13).

Here, Esparza's past interactions with the defendant—especially Esparza's prior drug purchases

from the defendant—tend to prove important facts of consequence, and are inextricably linked to the

charged offenses.  First, as noted above, the evidence tends to prove: (1) that Esparza and the defendant

knew each other; (2) that the defendant trusted Esparza; (3) that the defendant had the means to supply

methamphetamine; (4) that the defendant was in fact near Club Marakas as Esparza told the CI he was;

and (5) that the defendant knew of Esparza's plan to sell drugs and joined into that scheme.  The

government's theory is that Esparza and the defendant together conspired to sell methamphetamine on

November 16 and 17, 2015.  This important fact of consequence—indeed, this element of Count One—

is made more probable by the admission of testimony detailing Esparza's relationship with the defendant, a relationship that included buying methamphetamine from the defendant on a regular basis.

Second, the story of this crime does not make sense without the background only Esparza can provide. For example, in audio- and video-recorded conversations, Esparza told the CI that he would need to bring the CI to meet his "connection." Minutes later, he introduced the CI to the defendant. Esparza will provide context for his use of the term "connection" by explaining that he was referring to his longtime supplier: the defendant. Without this context, jurors will have no idea why Esparza and the defendant—who appear together on video recordings for only a few moments—decided to work together. Without this context, jurors will not know why Esparza had any idea of where to go to pick up the methamphetamine that he minutes later sold to the CI. With Esparza's testimony about his relationship and past dealings with the defendant, however, the jurors will be given a "coherent and comprehensible story" of the charges. The evidence should be admitted under Rule 401.

### 2.    Esparza's testimony is admissible, at a minimum, under Federal Rule of Evidence 404(b).

"Evidence of a crime, wrong or other act" may be admissible in a criminal case to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b)(2). It is well established that Rule 404(b) "is a rule of inclusion—not exclusion." *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc). "Once it has been established that the evidence offered serves one of [the purposes authorized by Rule 404(b)(2)], . . . the only conditions justifying the exclusion of the evidence are those described in Rule 403 . . . ." *Id.* (internal quotation marks omitted). Thus, "[u]nless the evidence of other acts only tends to prove propensity, it is admissible." *United States v. Castillo*, 181 F.3d 1129, 1134 (9th Cir. 1999); *United States v. Jones*, 982 F.2d 380, 382 (9th Cir. 1992) (Prior acts admissible "so long as the acts tended to make the existence of [the defendant's] knowledge or intent more probable than it would be without the evidence"); *see also United States v. Myers*, 123 F.3d 350, 363 (6th Cir. 1997) ("[W]here there is thrust upon the government, either by virtue of the defense raised by the defendant or by virtue of the elements of the crime charged, the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b)".).

1   Other acts evidence is admissible under Rule 404(b) if it: (1) tends to prove a material point in

2   issue; (2) is not too remote in time; (3) is proven with evidence sufficient to show that the act was

3   committed; and (4) if admitted to prove intent, is similar to the offense charged." *United States v.*

4   *Beckman*, 298 F.3d 788, 794 (9th Cir. 2002) (citations omitted); *accord United States v. Ramirez-*

5   *Robles*, 386 F.3d 1234, 1242 (9th Cir. 2004) (citations omitted).

6   The Ninth Circuit has repeatedly approved the admission of evidence of other narcotics

7   transactions pursuant to Rule 404(b) in narcotics distribution and conspiracy cases.  In particular,

8   evidence of prior drug distribution or smuggling operations are admissible to prove, among other things,

9   knowledge and plan in connection with the charged narcotics offenses, including conspiracy.  *See, e.g.,*

10  *Beckman*, 398 F.3d at 794; *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002); *Jones*, 982 F.2d

11  at 382; *United States v. Conkins*, 9 F.3d 1377, 1383 (9th Cir. 1993); *United States v. Ono*, 918 F.2d

12  1462, 1464-65 & n.2 (9th Cir. 1990) (upholding admission of seven year old conviction for possession

13  of heroin with intent to distribute to rebut defendant's claim that he had no intent to aid manufacture of

14  heroin-type substance and citing cases admitting other acts evidence more remote than seven years).

15  Furthermore, "[i]n conspiracy prosecutions, the prosecution is usually allowed considerable

16  leeway in offering evidence of other offenses to inform the jury of the background of the conspiracy

17  charged . . . and to help explain to the jury how the illegal relationship between the participants in the

18  crime developed." *United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016) (internal citations and

19  quotation omitted); *United States v. Johnson*, 28 F.3d 1487, 1499 (8th Cir. 1994) (drug sales during time

20  periods outside scope of conspiracy admissible to show intent, knowledge and absence of mistake);

21  *United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000) (upholding admissibility of defendant's

22  participation in uncharged drug trafficking conspiracy to prove defendant's intent to participate in

23  charged drug trafficking conspiracy).

24  Accordingly, if the Court disagrees that Esparza's testimony about his relationship with the

25  defendant should be admitted under Rule 401, the government moves to admit the testimony under Rule

26  404(b)(2).  As the Ninth Circuit has held in similar cases, the defendant's past drug sales to Esparza tend

27  to prove the defendant's knowledge of the conspiracy and its objective, his intent to distribute

28  methamphetamine, and his absence of mistake that the drugs in question were in fact methamphetamine.

### 3.     Federal Rule of Evidence 403 does not exclude evidence of Esparza's past dealings with the defendant.

Even if relevant and otherwise admissible, the Court may exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  "[T]he greater the degree of probativeness possessed by the evidence, the greater the showing of unfair prejudice that will be required to exclude the evidence." *United States v. Bailleaux*, 685 F.2d 1105, 1111 (9th Cir. 1982), *modified on other grounds by Huddleston v. United States*, 485 U.S. 681 (1988).

Rule 403 does not preclude evidence that prejudices the defendant's case; it only precludes evidence that unfairly prejudices the defendant's case.  *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991).  Evidence is unfairly prejudicial only "if it has an undue tendency to suggest a decision on an improper basis such as emotion or character rather than evidence presented on the crime charged." *Id.*  Potentially unfair prejudice to the defendant can be eliminated or mitigated through a limiting instruction to the jury.  *See, e.g., United States v. Arambula-Ruiz*, 987 F.2d 599, 604 (9th Cir. 1993).

The evidence of Esparza's relationship with the defendant is highly probative of essential facts and even elements of the charged offenses.  It does not suggest a decision on an unfair basis; rather, it suggests that the defendant indeed conspired with Esparza to distribute methamphetamine and in fact knowingly distributed methamphetamine on November 17, 2015. The Court should rule that the evidence is admissible.

F.     **MOTION IN LIMINE NO. 6: The Court should implement modest measures to protect the safety of the confidential informant and the integrity of ongoing investigations.**

The government intends to call as a witness a confidential informant ("CI") whose identity and potential impeachment information were disclosed to the defense under the Protective Order (Dkt. 25) on December 1, 2017.  This CI has participated in investigations related to dozens of cases and continues to work on several ongoing investigations.  He/she has had to be relocated due to death threats in the past.  Given this background, unnecessary exposure of the CI to the public could put at risk both

his/her safety and the integrity of ongoing investigations.  Accordingly, the government requests that the

Court implement the following modest measures to minimize those risks:

1. First, the government requests that the defense be reminded to comply with the Protective Order by refraining from including in public filings the CI's true name, or any information that could be used to identify him/her.  To be clear, the government has no objection to the CI's true name being used during trial and is not seeking to close the courtroom; the government only seeks to keep the CI's name and other identifying information out of public filings.

2. Second, during a trial at which the CI testified in 2017, someone in the gallery tried to take his/her photograph surreptitiously, apparently intending to "out" him/her to the public.  Accordingly, the government requests that court security direct all spectators in the gallery to put away electronic devices while the CI is testifying and ensure that no one takes his/her photograph.

The government believes that these modest measures will help ensure the safety of its witness.

G.    **MOTION IN LIMINE NO. 7: The Defendant should not be allowed to refer to punishment, including potential immigration consequences, in front of the jury.**

The government moves to preclude, as irrelevant and prejudicial, any reference by the defense to the defendant's potential sentence or punishment, or any potential immigration consequences, during all phases of the trial, including jury selection, opening statements, examination of witnesses (including the defendant, if he elects to testify), and summation.  Defense counsel should also be precluded from encouraging jury nullification.

"It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991).  This is so because informing the jury about potential sentences, or "other matters relating to [the] disposition of the defendant," tends to "draw the attention of the jury away from their chief function as sole judges of the facts, open the door to compromise verdicts and to confuse the issue or issues to be decided." *Id.* (emphasis ) (quoting *Pope v. United States*, 298 F.2d 507, 508 (5th Cir. 1962)); *see also Shannon v.*

1   *United States*, 512 U.S. 573, 579 (1994) ("[P]roviding jurors sentencing information invites them to

2   ponder matters that are not within their province, distracts them from their factfinding responsibilities,

3   and creates a strong possibility of confusion."); Ninth Circuit Model Crim. Jury Instruction No. 7.4

4   ("The punishment provided by law for this crime is for the court to decide.  You may not consider

5   punishment in deciding whether the government has proved its case against the defendant beyond a

6   reasonable doubt.").

7          Because information about punishment is "irrelevant to the jury's task," *Shannon*, 512 U.S. at

8   579, defense counsel should be precluded from making any reference to punishment—including the

9   defendant's potential deportation—in statements, questions, or argument during trial.  That reference

10  could be as overt as, "Mr. Robledo has faces a lengthy sentence," or more subtle, such as, "This case

11  will have serious consequences for Mr. Robledo," "Mr. Robledo's liberty is at stake in this trial," or

12  "Your decision will have consequences for a long time to come."  Once the jury hears anything about

13  punishment, the Court cannot "un-ring the bell" or neutralize the damage with a curative instruction.

14         For similar reasons, defense counsel should also be precluded from encouraging jury

15  nullification.  Neither a defendant nor his attorney has a right to present evidence or argument that is

16  irrelevant to an element of or a legal defense to the crime charged.  Verdicts must be based on the law

17  and evidence, not on jury nullification.  *See Merced v. McGrath*, 426 F.3d 1076, 1079 (9th Cir. 2005)

18  (affirming the district court's dismissal for cause of a juror who expressed a belief in exercising the

19  power of jury nullification and noting that, "while jurors have the power to nullify a verdict, they have

20  no right to do so"); *United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1991) (affirming district

21  court's refusal to give an instruction on jury nullification); *Zal v. Steppe*, 968 F.2d 924, 931 (9th Cir.

22  1992) (Trott, J. concurring) (citing *Chandler v. Florida*, 449 U.S. 560, 574 (1981)) (concluding that

23  defendants have "no right to jury nullification"); *see also United States v. Funches*, 135 F.3d 1405, 1409

24  (11th Cir. 1998) (noting that "the defendant enjoys a right to neither a nullification instruction nor a

25  nullification argument to the jury").

26         Just as defense counsel should be precluded from arguing, for example, that a conviction "will

27  have serious consequences for this defendant," so too should defense counsel be precluded from

28  suggesting that the jury should not convict because the defendant is a good person, because the

1  defendant has had a difficult life, because the defendant is in America "seeking a better life," because

2  the defendant "has already suffered enough," or because the government should have used its resources

3  in other ways.  Such argument could be a subtle comment on punishment, or simply an attempt at jury

4  nullification, such as references to "this petty case," comments regarding whether this case should have

5  been brought by the government in the first place, or characterizations of this crime as not worth the

6  jury's time.  Whether these comments evoke concepts of punishment or encourage jury nullification or

7  both, they are improper under the law.  Such comments present irrelevant and plainly prejudicial facts to

8  the jury, and try to get the jury to focus on the appropriate treatment of the alleged crime, rather than

9  whether the defendant is guilty of it.  Accordingly, the Court should preclude all such statements in

10  defense counsel's statements, questions, and argument.

11      H.  **MOTION IN LIMINE NO. 8: The defense should not be allowed to**

12  **reference in opening statement facts that it does not reasonably anticipate will be supported by evidence at trial.**

13      It is axiomatic that counsel may not refer to facts that they do not reasonably anticipate will be

14  introduced at trial.  Defense counsel may be tempted, however, to refer in his opening statement to

15  alleged facts that will never be supported, and are not reasonably anticipated to be supported, by

16  evidence introduced at trial.  Counsel's statements may include references to the defendant's

17  background, or improper character references, such as references to the defendant's criminal history, his

18  family circumstances, his immigration status, or why he came to the United States.  Such improper

19  statements may also include references to alleged "other acts" of government witnesses that have not

20  been noticed under Rule 404(b) and thus cannot be reasonably anticipated to be admitted into evidence.

21      The Court's pretrial order requires the defense to provide the government with an exhibit list and

22  a witness list.  If the defense intends to introduce evidence of the defendant's background or other facts,

23  therefore, it must provide the government with a list of defense witnesses or exhibits that will be used to

24  present this evidence to the jury.  Similarly, the defense must provide notice of certain defenses and

25  Rule 404(b) evidence it may intend to present.  If defense counsel does not provide such notice, and the

26  government is therefore not given a pretrial opportunity to challenge the admission of such evidence,

27  then defense counsel does not reasonably anticipate that it will be admitted and should not reference it in

28  his opening statement.

1     The government respectfully requests that, if defense counsel intends to reference the

2  defendant's background or "other acts" of any witnesses in opening statement, he be required to comply

3  with the Court's order and disclose to the government the witnesses and exhibits he intends to introduce

4  at trial to support these statements.  If defense counsel is unsure by the time of his opening statement

5  whether such evidence will be introduced, then he should be precluded from referencing the background

6  of the defendant or a witness, or any other facts he does not reasonably anticipate will be supported by

7  evidence.

8     I.     **MOTION IN LIMINE NO. 9: The defense should not be allowed to
9            introduce evidence that should have been produced in discovery.**

10    The government moves for an order precluding the defense from introducing evidence that

11 should have been produced under the reciprocal discovery obligations of Federal Rule of Criminal

12 Procedure 16(b), and pursuant to Rule 26.2 (reverse Jencks), requiring production of prior statements of

13 defense witnesses (other than the defendant) that relate to the subject matter about which the defense

14 witness(es) will testify.

### 1.     Reciprocal Disclosure under Rule 16

16    The reciprocal discovery requirements of Federal Rule of Criminal Procedure 16(b) require the

17 defendant to produce (A) information pertaining to "books, papers, documents, data, photographs, [or]

18 tangible objects . . . [if] the defendant intends to use the item in the defendant's case-in-chief at trial;"

19 (B) Reports of Examinations and Tests; and (C) "a written summary of any testimony that the defendant

20 intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence" pertaining to expert

21 witnesses.

22    The government has complied with its disclosure obligations and has requested reciprocal

23 discovery.  The defendant, however, has produced nothing in response.  The government therefore

24 moves for an order precluding the defendant from introducing evidence that should have been produced

25 under the reciprocal discovery obligations of Rule 16(b).

### 2.     Reciprocal Disclosure under Rule 26.2

27 Rule 26.2(a) of the Federal Rules of Criminal Procedure provides:

28     After a witness other than the defendant has testified on direct
       examination, the court, on motion of a party who did not call the witness,

1
2
3

> must order an attorney for the government or the defendant and the
> defendant's attorney to produce, for the examination and use of the
> moving party, any statement of the witness that is in their possession and
> that relates to the subject matter of the witness's testimony.

4   The statute embodying the rule was enacted to, among other things, "place in the criminal rules the

5   substance of . . . 18 U.S.C. § 3500 (the Jencks Act)."  Advisory Committee Notes, S. 1437, 95th Cong.

6   1st Sess. (1977).  Pursuant to Rule 26.2(a), neither the government nor a defendant is required to

7   produce witness statements until after the witness's testimony on direct examination.  The government,

8   however, has already produced all existing statements of its witnesses, and intends to produce any later-

9   created witness statements before trial.  Because of the reciprocal nature of Rule 26.2, and in the interest

10  of expediting trial proceedings, the defense should be required to produce its witness(es)' statements.  If

11  the defense declines to produce its witness(es)' statements until after direct examination, the trial will be

12  delayed unnecessarily because the government will need time to review those statements prior to cross-

13  examination.

14          Federal courts have "the responsibility to supervise the administration of criminal justice in order

15  to ensure fundamental fairness."  *United States v. Richter*, 488 F.2d 170, 173 (9th Cir. 1973) (citation

16  omitted).  The Court has "wide latitude" to "carry out successfully its mandate to effectuate, as far as

17  possible, the speedy and orderly administration of justice."  *Id.*  The government requests that the Court

18  use this power to effectuate the orderly administration of justice by ordering the pretrial production of

19  any defense witness statements, as well as any reciprocal discovery as stated above.  The Federal Rules

20  and the Court's pretrial order require the government to be afforded this fundamental fairness, and the

21  Court should preclude any evidence or proposed testimony not disclosed accordingly.  This should

22  include defense argument based on evidence or use of documents not disclosed to the government.

23  J.      **MOTION IN LIMINE NO. 10: The Court should preclude the defense**
24          **from presenting evidence or argument in support of any affirmative**
        **defense for which it has not made a pretrial offer of proof.**

25          A district court may preclude a defendant from presenting evidence or argument supporting an

26  affirmative defense if the defendant fails to make a prima facie showing of entitlement to the defense in

27  a pretrial offer of proof.  *See United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008)

28  (duress defense ruled inadmissible prior to trial); *United States v. Arellano-Rivera*, 244 F.3d 1119, 1126

1   (9th Cir. 2001) (necessity); *United States v. Mack*, 164 F.3d 467, 474 (9th Cir. 1999) (public authority

2   and entrapment by estoppel); *see also United States v. Gurolla*, 333 F.3d 944, 952 n.8 (9th Cir. 2003)

3   ("A district court may require a defendant to submit a pretrial offer of proof on an entrapment defense; if

4   the defendant fails to make a prima facie showing, the district court may preclude him from presenting

5   the defense at trial."). If a proposed defense is legally deficient even under the defendant's version of

6   the facts, evidence of the defense is simply "not relevant." *Vasquez-Landaver*, 527 F.3d at 802.

7          The Supreme Court explained the rationale for the practice of requiring a pretrial offer of proof

8   in *United States v. Bailey*, 444 U.S. 394, 416-17 (1980). The defendants in that case were charged with

9   escaping from prison in violation of 18 U.S.C. § 751(a), and the district court permitted them to

10  introduce evidence of allegedly coercive prison conditions to support a proposed duress defense. *Id.* at

11  398. But, after the defendants failed to present any evidence that they had surrendered to authorities

12  after freeing themselves from the prison—an "indispensable element" of such a defense—the district

13  court refused to instruct the jury on duress. *Id.* at 399-400. The Supreme Court not only affirmed the

14  district court's refusal to give the defendants' requested instruction, but held that, where "an affirmative

15  defense consists of several elements and testimony supporting one element is insufficient to sustain it

16  even if believed, the trial court and jury *need not be burdened with testimony supporting other elements*

17  *in the defense*." *Id.* at 416 (emphasis added). The Supreme Court noted that, by permitting the

18  defendants to present evidence on an incomplete affirmative defense, the district court had "present[ed]

19  a good example of the potential for wasting valuable trial resources." *Id.* at 417.

20         When this case began, the government requested that the defense provide notice of any proposed

21  defenses, but the defendant has not done so. To the contrary, the defendant stated in the parties' Joint

22  Pretrial Conference Statement that he does not intend to raise an affirmative defense. Accordingly, the

23  government moves to preclude the defendant from raising any eleventh-hour affirmative defense without

24  giving proper notice and making a prima facie showing in a pretrial proffer to Court. In the absence of

25  such a pretrial proffer, the defense could argue potential defenses that were never noticed and are not

26  reasonably anticipated to be supported by the evidence, which would not only be improper, but would

27  also mislead and confuse the jury and waste valuable trial resources. Accordingly, the government

28  requests that the Court order any legal defense such as duress, entrapment, necessity, justification, or

1  voluntary intoxication excluded in the absence of an adequate defense proffer.

2  **V.    CONCLUSION**

3          For all of the foregoing reasons, the government requests that the Court grant its motions *in*

4  *limine*.  The government also reserves the right to supplement these motions *in limine* if additional

5  issues arise that require the Court's intervention.

6

7  DATED:  January 8, 2018                                  ALEX G. TSE
                                                            Acting United States Attorney
8

9                                                          _____
                                                                  /s/
10                                                         JULIE D. GARCIA
                                                           RANDY LEONARD
11                                                         Assistant United States Attorneys

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28